UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ernesto Ayala Heredia, | No. 1:25-cv-00514-GSA |
| Plaintiff, | **OPINION & ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF** |
| v. | |
| Commissioner of Social Security, | |
| Defendants. | (ECF No. 16) |

### I.     Introduction

Plaintiff Ernesto Ayala Heredia seeks judicial review of a final decision of the Commissioner of Social Security denying his applications for social security disability insurance benefits and supplemental security income under Titles II and XVI the Social Security Act.[1]

### II.     Factual and Procedural Background

On February 8, 2022, Plaintiff applied for social security disability insurance benefits and supplemental security income alleging disability beginning on July 14, 2018. AR 242, 250. Plaintiff's claim was initially denied on March 25, 2022 (AR 89–90), and upon reconsideration on July 27, 2022 (AR 123–24).  A hearing before an ALJ was held on March 27, 2024.  AR 37. The ALJ issued an unfavorable decision on May 1, 2024.  AR 16.

### III.     The Disability Standard

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge.  Docs. 7, 12.

1

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his/her physical or mental impairment or impairments are of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he or she would be hired if he or she applied for work. 42 U.S.C. §1382c(a)(3)(B).

2

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§ 416.920(a)-(f).  The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled.  20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: 1- whether a claimant engaged in substantial gainful activity during the period of alleged disability; 2- whether the claimant had medically determinable "severe impairments"; 3- whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; 4- whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work; and 5- whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.  20 C.F.R. § 416.920(a)-(f).  While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given his/her RFC, age, education and work experience.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

### IV.    **The ALJ's Decision**

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since July 14, 2018, the alleged onset date.  AR 24.  At step two, the ALJ found that Plaintiff had severe impairments of lumbar radiculopathy and herniated intervertebral disc of lumbar spine. AR 24.  The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  AR 25.  The ALJ determined that Plaintiff had the RFC to perform a range of light work as defined by the regulations, except:

> can occasionally climb ramps and stairs, but no climbing of ladders, ropes, and scaffolds; can occasionally stoop, kneel, crouch, or crawl; can no more than occasionally operate a motor vehicle, and have no more than occasional exposure to vibration; and can understand, remember, and carry out simple, routine tasks.

AR 25–26.

Based on this residual functional capacity determination and the testimony of a vocational

expert, the ALJ found Plaintiff could not perform his past relevant work but could perform other work in the national economy, namely: garment sorter, marking clerk, and assembler small products. AR 29–30.  Accordingly, the ALJ found Plaintiff was not disabled at any time since the alleged onset date of July 14, 2018.  AR 31.

### V.    Issues Presented

Plaintiff asserts two claims of error: 1- The ALJ failed to properly evaluate the medical opinions, and 2- The ALJ failed to include work-related limitations in the RFC consistent with the nature and intensity of Plaintiff's limitations and failed to offer any reason for rejecting Plaintiff's subjective complaints.

### A.    Medical Opinions

#### 1.    Applicable Law

Before proceeding to steps four and five, the ALJ determines the claimant's residual functional capacity (RFC) which is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. § 416.945(a)(1). The RFC must consider all of the claimant's impairments, severe or not.  20 C.F.R. §§ 416.920(e), 416.945(a)(2). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

For applications filed on or after March 27, 2017, new regulations eliminate the prior hierarchy of medical opinions and provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."  20 C.F.R. § 404.1520c(a).  Instead, when evaluating any medical opinion, the regulations provide that the ALJ will consider the factors of supportability, consistency, treatment relationship, specialization and other factors.  20 C.F.R. § 404.1520c(c).

Supportability and consistency are the two most important of these factors, and the agency will articulate how the factors of supportability and consistency are considered. *Id.* "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as

unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 2022 WL 1195334, (9th Cir. Apr. 22, 2022) at *6.

With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1).  Regarding "consistency," the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2).

## 2.    Analysis[2]

### a.    Dr. Nadjmabadi

Plaintiff explains that Dr. Nadjmabadi opined both in June 2023 and again in January 2023 that Plaintiff was limited to a reduced range of sedentary work (AR 1946–49, 1954–57). However, the ALJ was unpersuaded by Dr. Nadjmabadi's opinion in part because the ALJ found that the opinion was "offered on a check box form without explanation or supporting evidence. The opinions are also inconsistent with [Plaintiff's] treatment history, which has documented some lower extremity weakness but generally indicated that he has intact physical functioning." AR 29 (emphasis added).  Initially, as to this finding made by the ALJ, it is worth pausing for a moment to recognize that use of check box forms is useful, and perhaps necessary to some extent, in ascertaining a physician's opinion on the regulations' various exacting requirements.  For example, "Sedentary" work, "Light" work, and "Medium" work are all Social Security terms of art.  Importantly, the check-box form fleshes out the meaning behind those terms as it relates to weightlifting limitations, frequency of weightlifting, duration of sitting/standing/walking both consecutively and total in an 8-hour day.

---

[2] It appears that Plaintiff inadvertently included an argument from another case concerning a Dr. Bautisa along with the inclusion of a related remand order, neither of which is applicable here. Plaintiff did not address this issue when it was identified by Defendant, and a text search through the OCR (text searchable) PDF reveals no hits for a Dr. Bautista.

The check box format also contains boxes and fill-in-the blanks which address a myriad of other specific considerations, some with unique applicability in the social security disability context including, but not limited to: 1-whether the impairments are expected to last 12 months or more; 2-the percentage of off-task behavior expected and what that term means in this context; 3- the ability to perform manipulative activities such as handling/fingering/feeling; 5-the need for assistive devices; and 6- the ability to perform postural maneuvers such as bending and crouching, and so on.  To this end, the check-box format is arguably the most efficient, directed, and time saving way to obtain a clinician's opinion as it is a closed-ended format which limits the range of the clinician's potential responses to those that are relevant to the Commissioner's exertional thresholds.  Finally, this allows the agency to neatly categorize the claimant.

It is also important to note that Dr. Nadjmabadi did not simply check boxes "without explanation or supporting evidence".  To the contrary, Dr. Nadjmabadi  provided a reasonable and topical (albeit concise) justification in the spaces provided.  Specifically, Dr. Nadjmabadi's responses, including short narratives when asked, explained that Plaintiff's physical limitations were due to radicular low back pain caused by a disc herniation, muscle spasms, sensory loss, range of motion deficiency, and reduced strength of 4/5 in legs. AR 1946–49.   Notwithstanding, the ALJ nevertheless identified valid reasons in support of the RFC which diverged from Dr. Nadjmabadi's opinion.

 Plaintiff additionally points to treatment notes submitted by Dr. Nadjmabadi which Plaintiff contends fully support the opined limitations. See e.g. Ar. 958, 998, 1014, 1287, 1291, 1826-27, 1862, 1874, 1906, 1909- 10, 1964, 1968, 1972, 1976, 1979, 1984, 1988, 1993, 1998, 2002-03, 2018-19. Plaintiff explains that the objective findings regularly showed Plaintiff had tenderness, decreased range of motion, decreased sensation, positive straight leg raise testing, decreased strength, and an antalgic gait. To this the Defendant responds that although the ALJ appropriately acknowledged that the record showed abnormal findings at times, it also showed normal findings at other times, such as normal gait, no spine tenderness, full strength and intact sensation.  AR 27–28, citing AR 1044–45, 1218–19, 1227, 1252–53, 1921, 1963–64, 2018–19). Defendant further explains that notwithstanding abnormal examination findings emphasized by

Plaintiff, Dr. Nadjmabadi cleared Plaintiff to "return to full work" in October 2022, which was also noted by the ALJ (AR 28, citing AR 2026-27; see also AR 2023).

Here, both parties cite to records and offer explanations that are reasonably supported by their respective citations to the record.  For example, even though Dr. Nadjmabadi's opinion was reasonably well supported by explanation and supporting records showing various deficiencies in strength and ROM, positive provocation signs (straight leg raise), all connected to abnormal spinal pathology, namely disc herniation, the ALJ also cited countervailing findings on many of the same.

In situations like this, when confronted with countervailing rational interpretations of the evidence, the law is instructive. It states that where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld, not the plaintiff's conclusion, even if the plaintiff's conclusion is a rational one.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  The primary question for the Court is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the contrary conclusion: non-disability. See Jamerson v. Chater, 112 F.3d 1064, 1067 (9th Cir. 1997).  That is, the deferential "substantial evidence" standard applies to the ALJ's reasonably supported conclusion, not Plaintiff's contrary (albeit reasonable) conclusion.

In addition however,  it is questionable whether Dr. Nadjmabadi's opinion is even reasonable  given that it limits Plaintiff to a reduced range of sedentary work (which includes only occasionally lifting more than 10 pounds, rarely performing any postural maneuvers, and walking and standing no more than 2 hours a day),  when considering an individual with only mild to moderate spinal abnormalities and no other severe impairments.  Specifically, a May 4, 2020 MRI showed at L4 a 2.9mm "slightly left side disc protrusion and facet hypertrophy," mild to moderate canal stenosis, moderate right side foraminal stenosis, mild to moderate right sided foraminal stenosis, at L5 a "possible spondylosis,"  "slight irregularity" in the posterior elements of the right side,  2mm bulging discs and facet hypertrophy, and  a final note that "The combination of these findings result in mild canal and moderate bilateral foraminal stenosis."  AR 1576 (emphasis added).  The remaining findings, per the radiologist, were "otherwise negative of

the lumbar spine". Id.

Thus, in light of the above discussion it cannot be said that the ALJ committed error when evaluating the medical evidence.

### B.        Subjective Complaints

#### 1.        Applicable Law

An ALJ performs a two-step analysis to determine whether a Plaintifft's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3. First, the Claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82. If the Claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the Claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." S.S.R. 16-3p at 2.

An ALJ's evaluation of a Claimant's testimony must be supported by specific, clear and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p at *10. Subjective testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of Claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

In addition to the objective evidence, other factors to be considered are: 1- daily activities; 2- the location, duration, frequency, and intensity of pain or other symptoms; 3- precipitating and aggravating factors; 4- the type, dosage, effectiveness, and side effects of any medication; 5- treatment other than medication; 6- other measures the Claimant uses to relieve pain or other

symptom;  and 7- other factors concerning the Claimant's functional limitations and restrictions due to pain or other symptoms. See, 20 C.F.R. § 416.929(c)(3).

### 2.    **Analysis**

To begin, Plaintiff's 1.5 page discussion is simply an overview of the law applicable to this issue but contains no distinct factual citations or discussion uniquely applicable to this case. Plaintiff's argument does not describe or cite to testimony or subjective complaints.  There is also no reference to Plaintiff's subjective complaints in Plaintiff's first argument section, which addresses only the opinion of a Dr. Bautista which, as Defendant emphasizes, appears to be related to a different case.   As a result, with no subjective symptom testimony identified, the issue is not preserved.  See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (stating a reviewing court ordinarily will not consider an issue that a claimant fails to argue with any specificity in the opening brief).

Notwithstanding, to the extent that Plaintiff's Complaint implies that his subjective symptoms cause him to be unable to meet the exertional requirements of the RFC (light work), Plaintiff's unadorned argument will nevertheless be considered.

In this regard, the ALJ noted as follows (truncated for brevity):

- On April 16, 2018, he had a work injury falling 2-3 feet, landing on his buttock.
- May 11, 2018 lumbar spine MRI noted disc extrusion at L4-5.
- He continued light duty work until July 11, 2018.
- PT, acupuncture, injections, chiropractic, and pain meds provided some benefit.
- 2018 visit noted radicular back pain and weakness.
- January 1, 2019 visit notes he "was returned to modified work," with no pushing, pulling, or lifting > 10 pounds, and no repetitive bending.
- April 2019, PT notes improved overall functioning.
- October 2019 exam noted antalgic gait, tenderness, limited ROM, some weakness, and he was returned to modified work, with lifting limitations increased to 20 pounds, but otherwise unmodified from the previous set of work limitations.
- May 4, 2020 MRI noted possible spondylosis, mild to moderate bilateral foraminal stenosis, DDD, and a slight SI joint irregularity bilaterally.
- Subsequent records note ongoing pain but with improved overall functioning.
- June 9, 2020 exam notes 7/10 radicular back pain. He denied neurological

9

symptoms, and had a normal gait, with no swelling or tenderness.
- September 8, 2020 exam notes numbness, tingling, pain 6/10 on average, and 7-8/10 with standing, prolonged sitting or walking. His gait, strength and sensation were normal with no swelling or tenderness. Bilateral SLR was positive.
- April 27, 2021 pain management visit noted normal gait, no swelling or tenderness, intact strength, reduce ROM.
- June 2, 2022 exam again noted positive SLR with decreased leg strength though he could walk, motor exam was normal, and sensation and reflexes were intact.
- He was released to full work on October 6, 2022 after a physical exam.
- November 17, 2022, exam noted pain, but no swelling or numbness. He had tenderness, and 4/5 strength in both legs, antalgic gait favoring the right
- December 7, 2023, exam noted pain, limited ROM, 4/5 strength in his legs, antalgic gait, but was able to walk. He denied but denied numbness or weakness.

Here the ALJ, while acknowledging that the evidence documented lumbar dysfunction limiting the claimant's ability to perform some basic work-related physical activities, added that "the claimant has substantially intact functional capabilities." AR 27–28. On balance, the ALJ's discussion reflects evidence of functionality and the absence of extreme deficiencies upon physical exam.

Objective medical evidence can undercut a claimant's testimony if that evidence contradicts the testimony or is inconsistent with it. See Smartt, 53 F.4tgh at 498 (collecting authority). Granted, as Plaintiff emphasizes, if there is objective medical evidence of an underlying impairment, as is the case here, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (emphasis added).

As set forth fully above, and repeated here, relevant factors on this issue include: 1- daily activities; 2- the location, duration, frequency, and intensity of pain or other symptoms; 3- precipitating and aggravating factors; 4- the type, dosage, effectiveness, and side effects of any medication; 5- treatment other than medication; 6- other measures the Claimant uses to relieve pain or other symptom; and 7- other factors concerning the Claimant's functional limitations and

restrictions due to pain or other symptoms. See, 20 C.F.R. § 416.929(c)(3).

As to these factors the ALJ noted: 1- Plaintiff's reports of improved functioning (factor 1: daily activities); 2-average pain level (factor 2: pain intensity); 3- aggravated by prolonged standing/sitting/walking (factor 3: aggravating factors), which was improved with medication (factor 4: medication efficacy), and, 4- improvement with PT, chiropractic, and acupuncture (factor 5: alternative therapies besides medication).

Thus, it is clear that the ALJ did not "solely" rely on objective medical evidence but appropriately considered several of the relevant factors enumerated in Bunnell based on Plaintiff's subjective reports to clinicians.  Finally, Plaintiff's subjective reports, often contained in an HPI[3], are not transformed into objective evidence simply because they appear in the medical records.

**VI.     Conclusion**

Substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled.

**VII.    Order**

Accordingly, it is ordered that:

1. Plaintiff's motion for summary judgment (Doc. 16) is **DENIED**.
2. Defendant's cross motion (Doc. 23) is **GRANTED.**
3. The decision of the Commissioner Social Security is **AFFIRMED**.
4. The Clerk of Court is directed to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff.

IT IS SO ORDERED.
Dated: **March 24, 2026**                              **/s/ Gary S. Austin**
                                              UNITED STATES MAGISTRATE JUDGE